**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

INDUSTRIAL ENGINEERING &
DEVELOPMENT, INC., ET AL.,

    Plaintiffs,

v.                                        Case No. 8:12-cv-691-T-24-MAP

STATIC CONTROL COMPONENTS,
INC.,

    Defendant.
_____/

## ORDER

This cause comes before the Court on the claim construction brief of Plaintiffs/Counterclaim Defendants Industrial Engineering & Development, Inc., Innovative Cartridge Technologies, Inc., Cartridge Corporation of America, Inc., American Imaging Cartridge, LLC; and Universal Imaging Holdings, LLC (collectively, "Industrial") [Doc. 102], the response brief of Defendant/Counterclaimant Static Control Components, Inc. ("Static") [Doc. 106], Static's claim construction brief [Doc. 103], and Industrial's response thereto [Doc. 107]. A *Markman* hearing was held on October 18, 2013.

Also before the Court is the Court's claim construction order, which requested the parties to submit memoranda explaining whether they agreed or disagreed with the Court's suggested construction for "predetermined memory location" to mean "a memory address where the imaging device expects the requested data to be stored" [Doc. 113], to which each party filed a response. [Docs. 115, 116.]

I.  **"PREDETERMINED MEMORY LOCATION" – '928 PATENT (CLAIMS 4, 12, AND 16)**

| Static's proposed construction | Industrial's proposed construction | Court's suggested construction |
|---|---|---|
| "the address on an OEM chip, from which the imaging device reads data, which the universal cartridge chip emulates" | No construction required. If required, then "a memory address that has been decided in advance" | "a memory address where the imaging device expects the requested data to be stored" |
| At the *Markman* hearing, Static proposed "the address on the OEM chip from which the imaging device requests data" | At the *Markman* hearing, Industrial proposed "a memory address" or "address" | |

As further explained in the Court's claim construction order [Doc. 113], the parties dispute the construction of the terms "mode of operation" and "predetermined memory location" of Static's U.S. Patent No. 7,088,928 (the "'928 Patent") and U.S. Patent No. 7,254,346 (the "'346 Patent"), which is a continuation of the '928 Patent.  The Court's claim construction order construed the term "mode of operation," but deferred ruling on construction of the term "predetermined memory location."  [Doc. 113].  The Court proposed construing the term "predetermined memory location" to mean "a memory address where the imaging device expects the requested data to be stored," and requested the parties to submit memoranda explaining whether they agreed or disagreed with the Court's suggested construction.  [Doc. 113].  In their responses to the Court's claim construction order, the parties did not propose a different construction or otherwise request further construction; rather, they stated that they agreed with the Court's suggested construction of the predetermined memory location. [Dkts. 115, 116].  The Court will therefore construe "predetermined memory location" to mean "a memory address where the imaging device expects the requested data to be stored."

Industrial stated that the "Court's proposed construction resolves much, if not all, of the objections [Industrial] had to [Static]'s proposed language." [Dkt. 115 at 2].  However, Industrial

noted that the Court's suggested construction "would permit a creative defendant to argue that an 'expectation' creates any number of requirements, details, and formulations not found in the specification or fair reading of the claim." [*Id.*]  The Court does not understand Industrial's comment to mean that additional construction is required, and Industrial did not propose an alternative construction of the term.

Similarly, Static stated that the Court's suggested construction was "a proper and sufficient construction." [Dkt. 116 at 1].  However, Static also stated that it believes:

> [T]he Court's statement that the "claim language suggests that the predetermined memory location is in the universal cartridge chip's memory" (Order at 13-14) should be clarified to the extent that it might suggest that the claimed chip has to store any particular data at the location the printer is attempting to read (*i.e.*, at the memory location identical to that on the OEM chip being emulated).

[*Id.* at 1-2].  The Court does not see how its statement suggests that the claimed chip has to store particular data at the predetermined memory location.  To the extent clarification is necessary, the Court finds that nothing in the specification requires the universal cartridge chip to return data from the predetermined memory location.  As the Court noted in its prior claim construction order (which Industrial did not address in its response accepting the Court's suggested construction), claims 4, 12, and 16 are silent as to whether the returned value come from the predetermined memory location.  Although the universal cartridge chip returns different values (a first value, which is different from a second value) when imaging device reads the predetermined memory location, the claim language does not require that the value be stored at or returned from the predetermined memory location.  Similarly, in describing an embodiment where the universal cartridge chip returns different values when the printer performs a read of the predetermined memory location, the detailed description of the '928 Patent does not require that the values be returned from the predetermined memory location.  *See* '928 Patent, col. 6, col. 6, lines 7-39.

Accordingly, it is **ORDERED AND ADJUDGED** that the Court construes "predetermined memory location" to mean "a memory address where the imaging device expects the requested data to be stored."

**DONE AND ORDERED** at Tampa, Florida, this 16th day of December, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record