**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

INDUSTRIAL ENGINEERING &
DEVELOPMENT, INC., INNOVATIVE
CARTRIDGE TECHNOLOGIES, INC.,
CARTRIDGE CORPORATION OF
AMERICA, INC., AMERICAN
IMAGING CARTRIDGE, LLC; and
UNIVERSAL IMAGING HOLDINGS,
LLC,

       **Plaintiffs,**    Case No. 8:12-cv-691-T-24MAP

v.

STATIC CONTROL COMPONENTS,
INC.,

       **Defendant.**
_____/

STATIC CONTROL COMPONENTS,
INC.,

       **Counter-claimant,**

v.

INDUSTRIAL ENGINEERING &
DEVELOPMENT, INC., INNOVATIVE
CARTRIDGE TECHNOLOGIES, INC.,
CARTRIDGE CORPORATION OF
AMERICA, INC., AMERICAN
IMAGING CARTRIDGE, LLC, and
UNIVERSAL IMAGING HOLDINGS,
LLC,

       **Counter-Defendants.**
_____/

**PLAINTIFFS' MOTION IN LIMINE**

**Contents**

I. HEARSAY TESTIMONY OF LEXMARK INTERNATIONAL .......................... 3

II. THE COURT SHOULD EXCLUDE HEARSAY TESTIMONY OFFERED BY MICHAEL SHELBY ................................................................................................ 7

III. STATIC SHOULD NOT BE PERMITTED TO SPECULATE ABOUT DOCUMENT AUTHENTICITY ........................................................................ 10

IV. DOCUMENTS NOT PRODUCED IN DISCOVERY SHOULD BE EXCLUDED ................................................................................................................................ 11

V. DAVID ABRAHAM ................................................................................................ 12

VI. DUPLICATIVE EXPERT TESTIMONY ............................................................. 16

VII. THE COURT SHOULD EXCLUDE TESTIMONY REGARDING ALLEGED STEALING OF STATIC'S CODE ........................................................................ 17

VIII. CONCLUSION ........................................................................................................ 18

LOCAL RULE 3.01(g) CERTIFICATION ..................................................................... 19

COMES NOW Plaintiffs, INDUSTRIAL ENGINEERING & DEVELOPMENT, INC., INNOVATIVE CARTRIDGE TECHNOLOGIES, INC., CARTRIDGE CORPORATION OF AMERICA, INC., AMERICAN IMAGING CARTRIDGE, LLC; and UNIVERSAL IMAGING HOLDINGS, LLC, by and through their undersigned counsel, and moves this Court *in limine* as follows:

I.  HEARSAY TESTIMONY OF LEXMARK INTERNATIONAL

Before the testimony of a witness can be admitted, it must be established that the witness has personal knowledge of the facts offered as evidence. Rule 602, Fed.R.Evid., provides:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

Mr. Newman was designated to speak on behalf of Lexmark International, a third party, pursuant to Rule 30(b)(6). During the deposition, it was clear that none of his testimony was based on his personal knowledge. Static now seeks to rely on this testimony, claiming because Mr. Newman was designated as the corporate representative, somehow the hearsay rule does not apply to this non-parties' testimony

Fed.R.Civ.P. Rule 30(b)(6) permits a corporation to provide testimony that binds the corporation through a designated individual even if the individual does not have personal knowledge of the facts. Static is not offering the testimony to bind Lexmark, a non-party, but offering it as facts adverse to Plaintiffs. Rule 30(b)(6) is not intended to bypass the hearsay rule and allow rank hearsay to be used as evidence. The procedure was designed to alleviate the practice of serial depositions of agents of corporations, with each disclaiming knowledge of facts. Fed.R.Civ.P. Rule 30 (Advisory Committee Notes,

1970). Rule 602 still requires any party offering testimony at trial to show it is based on personal knowledge. Designating a witness to repeat what others in the organization may (or may not) have said does not create an exception to the hearsay rule, nor does labeling the testimony as Rule 30(b)(6) testimony permit hearsay testimony to be admitted.

Numerous courts have rejected hearsay evidence by a corporate deponent. *See*, *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 215, n. 5 (S.D.N.Y. 2007); *Digene Corp. v. Ventana Med. Sys.*, 316 F. Supp. 2d 174, 181 n. 10 (D. Del. 2004); *Efferson v. Kaiser Aluminum & Chem. Corp.*, 816 F. Supp. 1103, 1116 n. 31 (E.D. La. 1993); *Weber Aircraft, L.L.C. v. Vikram Krishnamurthy*, 2014 U.S. Dist. LEXIS 9368 *7, 8 (E.D. Tex. 2014) ("any evidence introduced through such a witness [30(b)(6) witness] at trial must also be admissible at trial according to the Rules of Evidence") The "corporate" testimony of a 30(b)(6) representative remains subject to hearsay objections:

> Given that some of Thompson's testimony may be admitted based upon the corporate knowledge of Chef's Best, the next question is how far the concept of "corporate knowledge" can be stretched. Few courts have addressed this issue, but the purposes underlying Rule 30(b)(6) must be balanced against the real dangers of admitting testimony based on hearsay. See *Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co.*, 993 F.2d 446, 473 n. 29 (5th Cir. 1993) (corporate representative may not repeat "rank hearsay"). For instance, the court doubts that a Rule 30(b)(6) witness should be allowed to testify about the details of a car accident in lieu of the corporation's truck driver. . . .

*Sara Lee Corp. v. Kraft Foods, Inc.*, 276 F.R.D. 500 (N.D. Ill. 2011).

The Court in *Sara Lee* goes on to warn:

> The dangers of testimony based on corporate knowledge multiply where the Rule 30(b)(6) witness is a third party rather than an opposing party. When courts allow one party to admit Rule 30(b)(6) testimony from the opposing party, little concern arises about whether the opposing party was able to meaningfully cross-examine the statements of its own

4

>representative. . . . . The concern about meaningful cross-examination is much greater with third-party Rule 30(b)(6) testimony; if the witness lacks personal knowledge, there may be little chance to meaningfully cross-examine the witness at the deposition.

*Id*.

The warnings of Sara Lee are particularly applicable with regard to Mr. Newman's testimony. Of critical importance in this case are the *exact* dates when products containing certain alleged functionality were sold. Mr. Newman admits he has no personal knowledge of these critical facts, testifying he learned the information from a number of individuals at Lexmark who collected information at his request and as described by him. (Newman Depo., p. 8)[1]. Some information may have been pulled from Lexmark computers, but he cannot testify these records constitute reliable business records. (Newman Depo., p. 19).

Because Mr. Newman had no personal knowledge of the facts, Plaintiffs were precluded from conducting any meaningful cross-examination to test the "facts" that Mr. Newman offers. (Newman Depo., 74:16-76:2, 81:1-82:7). Lexmark did not produce any of the underlying source documents upon which the employees of Lexmark allegedly relied on for Mr. Newman's testimony. *Id*. On the critical timing issues—the dates products were available—Mr. Newman had no personal knowledge. (*Id*. at 79:2-82:7). Mr. Newman did not participate in writing any of the printer chip code that goes to the heart of the issues in this case. (Newman Depo., p. 76). On the critical issues--the date products were available--Mr. Newman had no knowledge. (Newman Depo., 79:2-82:7). The testimony concerning the dates Static now seeks to rely on are nothing more than

---

[1] Static filed the Deposition and Declaration of Mr. Newman under seal at Dkt. 191.

5

hearsay upon hearsay. Lexmark employees allegedly reviewed certain undisclosed records. To further remove the "evidence" from admissibility, the records of sales dates were not sales dates – the proffered dates reflect "announce" dates of products, not the critical issue. (Newman Depo., pp. 79-80). Mr. Newman could not testify which firmware version matched the dates in his testimony. (Newman Depo., p. 90:6-92:3). Indeed, he could not identify which firmware version Lexmark employees reviewed to provide the information relied on. *Id.* He was able to confirm that firmware from different years would have different functionality. *Id.* Mr. Newman never looked at the source documents upon which he based his testimony and declaration, relying on his employees to review the undisclosed documents, he merely relayed what these employees said. (Newman Depo., p. 74:16-76:2, 81:1-82:794:17-96:12).

Importantly, there is absolutely nothing that hindered Static from obtaining the information directly from the appropriate documents or Lexmark employees. Mr. Newman identified who the employees were. (Newman Depo., pp. 74, 89, 93, 98). Static could have made the effort to obtain admissible evidence, but chose to rest its case on double hearsay, totally devoid of documentary support. A company the size of Lexmark should have the source documents that would permit a reasonable investigation into the dates and functionality. The only conclusion that can be drawn is that the documents would *not* have been favorable to Static and Static chose instead to hide behind vague, inadmissible conclusions.

As testified by Mr. Newman, the dates relied upon were "pulled . . . from a supplies marketing database where they track all the products that were announced for

sale." (Newman Depo., p. 19). He further testified "I don't know all the details that are contained within that database, but they did have all the announce dates of the products." (Newman Depo., pp. 19-20). To the extent Static now seeks to rely upon the database, which appears to be the only basis for the testimony concerning dates, it is the documents reflected in this database that constitute the best evidence. Pursuant to Rule 1002, Fed.R.Evid., when a proponent of the evidence seeks to prove the contents of a writing, the proponent must produce the original document. *See*, *United States v. Howard*, 953 F.2d 610, 612 and n.1 (11th Cir. Ga. 1992); *United States v. Tombrello*, 666 F.2d 485, 491 (11th Cir Ala. 1982), *cert. den'd*, 456 U.S. 994 (1982). Here, Mr. Newman is being offered to testify what certain records may say, but those records have been withheld. This issue falls squarely within Rule 1002, Fed.R.Evid. Indeed, to the extent Static offers the evidence as a "summary," Rule 1006, Fed.R.Evid., would still require that "the proponent make the originals or duplicates available for examination or copying." Here, the only evidence offered by Static is the testimony of Mr. Newman who is seeking to testify as to the contents of Lexmark's business records in order to establish the facts contained in those documents without ever having produced the underlying documents. This effort fails to comply with the Rules of Evidence and must be excluded.

The Court should bar use of Lexmark's/Mr. Newman's testimony as inadmissible hearsay or for failure to produce and rely on the best evidence of documentary records.

II.  THE COURT SHOULD EXCLUDE HEARSAY TESTIMONY OFFERED BY MICHAEL SHELBY

In support of summary judgment, Static has let it be known that it intends to rely heavily on the testimony of Michael Shelby, an employee of Static. Mr. Shelby joined

7

Static in 2005 and, prior to 2005, had no experience in the printer industry. Mr. Shelby has offered testimony on actions allegedly occurring in 2002-2005 (Shelby Decl. at ¶¶8-17)[2] and has offered what purport to be exact dates of sales, despite the fact he was neither employed at the time nor is he the record custodian of such sales records. When Mr. Shelby was asked to reveal his knowledge of such dates, he acknowledged that the entirety of his testimony on invalidity and dates of sale was based on documents he had read. (Deposition of Shelby as Expert, p. 46, ll. 16-19).[3] He further acknowledged Static had not produced the documents upon which he relied as his testimony. (Shelby Depo., p. 46, ll. 20-21; p. 47, ll. 22 -- p. 48, l. 12). On other "facts," Mr. Shelby was unable to recall where he got his information. (Shelby Depo., p. 49, ll. 13-22; p. 52, ll. 1-20). Mr. Shelby has no personal knowledge of any of the facts concerning the dates and functionality of any of the referenced uses, claims of invalidity. Without personal knowledge, Mr. Shelby should be precluded from offering any testimony concerning the sales and details of sales set forth in his Declaration at ¶¶8-17. Nonetheless, Static relies on Mr. Shelby to offer "facts" about events and activities that occurred before he joined Static. Mr. Shelby could not have personal knowledge about these facts and events.

Thus, Mr. Shelby's testimony is not based upon his personal knowledge and is therefore inadmissible pursuant to Rule 602, Fed.R.Evid.

Static has attempted to circumvent Rule 602 by suggesting that Mr. Shelby can testify about what he read from business records of Static:

---

[2] The Declaration of Mr. Shelby is filed at Docket No. 155.
[3] Pertinent excerpts of the Deposition of Mr. Shelby is filed at Dkt. 170, Exhibit C.

8

> I have knowledge of the facts set forth in this Declaration based upon . . . the reliance of business records of Static Control Components, Inc. The business records of Static Control record acts, events, and conditions, and were made at or near the time by, or from information transmitted by, someone with knowledge of these facts; the records were kept in the course of a regularly conducted activity of a business, namely Static Control; the making of the record was a regular practice of that activity by Static Control; and I and others employed by Static Control regularly rely upon these business records to conduct the business of Static Control; and the information and preparation of these records have been found to be trustworthy.

(Declaration of Shelby, ¶3).

The various records on which Mr. Shelby apparently relies have not been produced in this case. While there is a business records exception to the hearsay rule, this is for the records themselves, not testimony concerning what the records may say. Moreover, it must be the records custodian that authenticates the records, not just anyone at Static. Mr. Shelby is not the records custodian. (Shelby Depo., p. 46, ll. 16-19). However, even if he was the records custodian, this only means the records could come into evidence – not Mr. Shelby's testimony about what he recalls the records to reveal. To the extent Static wishes to prove the factual content of documents, it must rely on the documents, not Mr. Shelby's interpretation of the documents, which it did not produce in discovery. Because the documents relied upon by Mr. Shelby were not produced, Mr. Shelby's testimony is nothing more than hearsay testimony as to what the documents reveal. The best evidence rule (1002, Fed.R.Evid) mandates the records be used as the evidence, not Mr. Shelby's recollection of the records. There is no business records exception to Rule 1002, Fed.R.Evid. Instead, pursuant to Rule 803(6), Fed.R.Evid., the records may be admitted if the proponent can meet the authentication requirements set forth in the Rule.

Regardless of whether the documents qualify as business records pursuant to the hearsay exception, the documents would nonetheless be subject to being stricken because Static failed to produce the documents during the course of this litigation.

III. <u>STATIC SHOULD NOT BE PERMITTED TO SPECULATE ABOUT DOCUMENT AUTHENTICITY</u>

Static has cast unfounded aspersions as to the authenticity of inventor notes written by Mr. Steven Miller (the President or Managing Member of each of the Plaintiffs). (*See* Dkt. 177, p. 24). Should invalidity continue to be an issue in this case, then Plaintiffs will rely on these notes in its invalidity claims against two of Static's patents. Four separate people have been deposed about these notes and recalled seeing them. Two of these people, Mr. Perez and Mr. Goncalves, were employees of a company called MSE, a third is the owner of OmniCopy, Ed Pugilese, who showed the notes in a presentation to Publix, and the Four was Attorney Robert Shear, who previously represented Mr. Miller in non-patent matters. (*See* Dkt. 193, Robert Shear Deposition ("Shear Deposition"), pp. 6-9 and Exhibit 1; Dkt. 153, Exhibit O, Jesus Gonzalez Perez Deposition ("Perez Deposition"), pp. 9-10 and Exhibit 1; Dkt. 153, Exhibit P, Evandro Goncalves Deposition ("Goncalves Deposition"), pp. 9-11, 15-16, 49-50 and Exhibit 1; Exhibit A, Edward Pugliese Deposition, pp. 16-18, 20 – 23, and Exhibit 1). Mr. Perez and Mr. Goncalves testified that they saw the notes in early 2003 at a trade show. (Perez Deposition, pp. 9-10 and Exhibit 1; Goncalves Deposition, pp. 9-11, 15-16, 49-50 and Exhibit 1). There is a facsimile cover sheet from Mr. Miller to Mr. Shear on the notes dated September 15, 2002, and Mr. Shear had no reason to doubt that this was when they were transmitted. (Shear Deposition, pp. 6-9).

Other than mere speculation, and a purported expert report to the affect that the date on the fax machine can be set by the user,[4] Static has produced no evidence contesting that the authenticity of the notes and should therefore not be allowed to do so at trial.  *See United States v. Lebron*, 2012 U.S. Dist. LEXIS 142434, *4 (M.D. Fla. Oct. 2, 2012) (granting motion in limine to allow introduction of business records that were authenticated by declarations and stating that "Defendant's unspecified and generalized statement that some of the documents he reviewed contain 'either forged, computer generated/transposed or photocopied copies of [his] signature' is simply insufficient to raise a genuine issue of the original's authenticity. . . . These conclusory allegations are without sufficient factual support to raise a genuine question as to the trustworthiness of the documents") (citing *United States v. Lock*, 411 Fed. App'x 5, 7 (7th Cir. 2010) ("[g]iven the lack of factual support for these claims, the district court did not abuse its discretion in rejecting them")).  Static has produced no evidence that the notes are not authentic, and should not be allowed to insinuate they are not based on mere supposition.

IV. <u>DOCUMENTS NOT PRODUCED IN DISCOVERY SHOULD BE EXCLUDED</u>

Plaintiffs respectfully request this Court prevent Static from introducing any additional documents or items not produced prior to the close of discovery at trial.  *Estate of Miller v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 29846, *17 (M.D. Fla. July 22, 2004) ("[e]vidence of the existence or contents of any document, photograph, motion picture film, videotape computer disc or other item which has not been previously

---

[4] Plaintiffs are moving to exclude the expert of report and testimony of Albert Lyter, III, Ph.D. on the grounds that his report does nothing to help the jury.  His only real opinion is that the notes were transmitted by facsimile and the date of the transmission imprinted on the page could have been altered by the user.

disclosed and produced in discovery is inadmissible without a prior order of the Court"). Although this is a general rule that Plaintiffs acknowledge might not otherwise be appropriate for a Motion in Limine, in its Motion for Summary Judgment, Static relied upon nine documents that were not produced before the close of discovery. (*See* Dkt. 178-2, 178-3, 182-1, 182-2, 182-3, 182-4, 184-2, 184-4, and 190). Moreover, Plaintiffs contend that Static has a *Woodland*[5] problem with respect to many of the documents it relied upon in support of its invalidity contentions as to Plaintiffs' patents. As Plaintiffs went into painstaking detail to point out all of these issues in its response to Static's motion for summary judgment, Plaintiffs would be unfairly prejudiced if Static takes a similar tactic with respect to trial, suddenly showing up with all of the documentation that it should have produced during discovery. Accordingly, Plaintiffs request that this Court prevent Static from introducing any new evidence not disclosed during the discovery period.

V.   DAVID ABRAHAM

Static seeks to shoehorn incarcerated third-party individual David Abraham into this case. (*See* Dkt. 99, Motion to Depose Confined Person,). David Abraham is a former friend and employee of Steven Miller. In late 2002, with the assistance of Mr. Miller, Mr. Abraham started a catalog business distributing printer cartridge components under the name Inter Solution Ventures, Ltd. ("ISV"). ISV distributed dedicated printer chips[6]

---

[5] In *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368 (Fed. Cir. 1998), the Court explained that the very heavy burden to be meet by one challenging validity and offering only oral testimony as to past events is not sufficient. (*See* Dkt. 170).

[6] The patents-in-suit relate to printer chips with various forms of universal functionality, including functionality in multiple brands and models of printers. In contrast, dedicated printer chips only function in a specific brand and model of printer.

manufactured by Platinum Manufacturing International, Inc., a third-party company owned by Mr. Miller. Mr. Abraham had no role in the development or manufacturing of any printer chips. ISV landed a few large customers and experienced some initial success. Unfortunately, Mr. Abraham had personal issues relating to substance abuse that made him unreliable, and ultimately resulted in his incarceration on more than one occasion. Prior to his incarceration in March of 2003, Mr. Abraham turned over control of ISV to Mr. Miller. Thereafter, Mr. Miller controlled ISV to service existing customers. Since 2004, another third-party company has been the primary distributor of printer chips developed by Mr. Miller's companies. Mr. Abraham is not now, and never has been, a principal, employee, or distributor of Plaintiffs. Mr. Abraham has no interest in the patents-in-suit or the outcome of this case.

Mr. Abraham is not a witness for Plaintiffs and does not have any information relevant to this case. Plaintiffs objected to Mr. Abraham's deposition because he lacks any relevant information, and could only serve the improper and prejudicial purpose of presenting the Jury with a deposition taken from jail. (*See* Dkt. 104, Opposition to Deposition,). In fact, Static had already deposed Mr. Abraham in April of 2005, and discovered then that he did not have any role in the development of printer chips, had no information about printer chip sales, and had turned over his distribution business to Steven Miller in early 2003. (*See* Dkt. 104, pp. 3-5 and transcript attached thereto). Nonetheless, Static represented to this Court that a deposition was necessary because:

> Mr. Abraham is expected to have knowledge of cartridges and chips utilized by ISV and Miller that could constitute invalidating prior art and/or provide the basis for an on-sale bar;

13

> Defendant believes further that Mr. Abraham will proffer testimony regarding the role Steve Miller and others played in early chip development and manufacture, another issue highly pertinent to potential invalidity; and
>
> Finally, Mr. Abraham is expected to proffer testimony regarding the inter-relationship of ISV and Mr. Miller's other entities (including some of the Plaintiffs).

(*See* Dkt. 99, Motion to Depose Confined Person,).

Static was permitted to take the deposition. (Dkt. 105, Order). As expected, the deposition confirmed that Mr. Abraham continues to have *no* knowledge of *any* relevant facts. (*See* Dkt. S-201, Abraham Transcript). Mr. Abraham did not even know what a universal chip was. This follows from the fact that his involvement in ISV ceased prior to Plaintiffs' distribution of universal printer chips. He further testified that he had no knowledge concerning the development of printer chips, and had no recollection of customers or sales of ISV. Indeed, Mr. Abraham had testified in 2005 that he suffered from significant memory issues due to years of substance abuse, thus it is no surprise that Mr. Abraham was unable to remember information from a decade ago.

The deposition took place in jail. Clearly, Static wishes to exploit Plaintiffs' past relationship with Mr. Abraham and somehow imply Plaintiffs should not be trusted because Mr. Abraham is in jail. Mr. Miller's attempt to help Mr. Abraham is admirable; unfortunately, Mr. Abraham has continued to suffer from personal issues and has not been part of any business activity relevant to this action. Static seeks to exploit Mr. Miller's attempt to assist a troubled employee he took a liking to, and the unfortunate circumstances of Mr. Abraham's ongoing troubles, to create prejudicial inferences.

Static's motives are apparent from a review Static's response to Plaintiffs' summary judgment motion, which spends an entire page linking Mr. Miller to ISV—an issue that is not disputed. (*See* Dkt. 177, p.15).[7] What is disputed are Static's irrelevant and fanciful claims that Mr. Miller used David Abraham's identity to hide his involvement in the printer chips industry. This makes no sense when considered in light of the fact that Mr. Miller filed dozens of patents in his own name that were then marked on products, and personally attended trade shows to generate business at that time. Mr. Miller's control of ISV became necessary due to ISV's rapid success and Mr. Abraham's incarceration. Static's conspiracies are entirely irrelevant to any issue in this case, because David Abraham is irrelevant. While ISV had no role in the development of universal printer chips, Plaintiffs do not dispute that Mr. Miller controlled the business of ISV from early 2003 forward for whatever value Static thinks that fact holds. However, it is not necessary to any factual dispute of consequence that Mr. Abraham became incarcerated and turned ISV over to Mr. Miller. Static simply hopes to prejudice Mr. Miller through his past association and friendship with someone that suffered from substance abuse and became incarcerated. These facts have no evidentiary value to any issue in this case, and even if they did, the prejudice suffered by Plaintiffs is greatly outweighed by its evidentiary value. Accordingly, Plaintiffs seek to exclude, as irrelevant and prejudicial under FRE 402 and 403, (i) the testimony of David Abraham, (ii) references to David Abraham, (iii) references to an associate of Mr. Miller having been

---

[7] Notably, Static does not cite to the Deposition of Mr. Abraham taken in this case once.

incarcerated, homeless, or suffering from substance abuse issues, and (iv) reference to Mr. Miller allegedly concealing his identity.

## VI. DUPLICATIVE EXPERT TESTIMONY

Static has listed three experts to offer opinions on invalidity, Dr. Ligatti, Mr. Shelby, and Mr. Thacker. To a large extent, their testimony is overlapping and redundant. "The district court has broad discretion to determine the admissibility of evidence, and we will not disturb the court's judgment absent a clear abuse of discretion." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. Fla. 1998). Federal Rule of Evidence 403 permits relevant evidence to be excluded where its probative value is substantially outweighed by, among other things, the danger of prejudice and the needless presentation of cumulative evidence. As the District Court for the Northern District of Illinois noted:

> Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by "counting heads" rather than evaluating the quality and credibility of the testimony.

*Sunstar, Inc. v. Alberto-Culver Co.*, 2004 U.S. Dist. LEXIS 16855, *75 (N.D. Ill. Aug. 20, 2004). Similarly, the Eleventh Circuit held that Judge Presnell did not abuse his discretion by excluding a second expert who was expected to testify on the same subject matter. *See Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. Fla. 2005). In the *Tran* decision, the Eleventh Circuit noted that the experts in question had similar qualifications and relied on the same evidence to reach their conclusions. *See id.*

VII. THE COURT SHOULD EXCLUDE TESTIMONY REGARDING ALLEGED STEALING OF STATIC'S CODE

Static has sought to introduce testimony to the affect that ISV (which is not a party to this action) and/or Mr. Miller purportedly copied some undisclosed code of Static's back in 2003. These allegations were included in a lawsuit that Static filed against ISV and Mr. Miller, among others, that resulted in the Settlement and License Agreements at issue in the current dispute. (*See* Dkt. 153, Plaintiffs' Motion for Summary Judgment). Although the allegations were never proven, nor were they included in the current counterclaims filed by Static, Static has repeatedly brought them up in this matter, accusing Mr. Miller and ISV, a company related to Mr. Miller, of stealing whenever the mood strikes. Importantly, no discovery has been undertaken on these issues; Static has never even identified what code Mr. Miller and ISV allegedly stole. Moreover, after the lawsuit was settled, Ed Swartz, CEO of Static, stated in a news article that if he "had known the whole story, then this dispute would have settled a long time ago. Mr. Miller is a hard-working, bright young man, and I look forward to working with him." (Exhibit B). Regardless, these issues have no bearing on any of the issues to be presented to the Jury, and are not relevant to the current dispute; the only reason they are brought up are to cast a bad light on Mr. Miller's character.

"The essential prerequisite of admissibility is relevance." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. La. 1981) (citation omitted). "To be relevant, evidence must have some tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. (internal quotes and citations omitted). These allegations have no

17

tendency to make any fact at issue more or less probable, and are therefore not relevant and should be excluded. This case is a breach of contract action for Static's failure to pay licensing fees. Invalidity claims against two of Static's patents and Plaintiffs' patents-in-suit are also currently at issue, but will hopefully be avoided if Plaintiffs' Motion for Summary Judgment is granted.[8] There is not, however, a copyright infringement or other theft claim by Static at issue, and whether Mr. Miller and/or ISV copied code of Static's back in 2003 is simply not relevant to the current claims.

Even if it was, the danger of undue prejudice would outweigh any minor amount of probative value. Even if relevant, evidence may be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Static has not proven Mr. Miller and ISV have stolen anything, and to cast them as thieves carries a real risk of unfairly prejudicing the jury against them, particularly when there has been no evidence produced to support such an aspersion.[9] Thus, any arguable probative value would be outweighed by the danger of unfair prejudice to Plaintiffs. Accordingly, Plaintiffs respectfully request that this Court exclude any testimony regarding Plaintiffs' alleged stealing of Static's code.

VIII. <u>CONCLUSION</u>

---

[8] In the event that Plaintiffs' Motion for Summary Judgment is not granted and this Court decides to allow the jury to decide whether the no-challenge clause is enforceable, then these allegations may have some relevance to the extent that they were at issue in the former litigation.

[9] The only evidence submitted by Static on this point was in the expert report of Michael Shelby, who was not even employed at the time the alleged theft occurred and has no first-hand knowledge of those events. *See* Section I, *supra*.

For the reasons set forth above, the Court should grant this Motion and exclude the following evidence offered by Static:

(1) Hearsay testimony of Lexmark International;

(2) Hearsay testimony of Michael Shelby;

(3) Speculation regarding the authenticity of the Miller Notes;

(4) Evidence not produced during discovery;

(5) Evidence regarding David Abraham; and

(6) Testimony regarding the alleged theft of Static's code.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Plaintiffs has conferred with counsel for Static who has stated he opposes the relief sought in this Motion.

WHEREFORE, Plaintiffs respectfully request the Court grant Plaintiffs' Motion *in Limine*, and such other and further relief as this Court deems just and proper.

Respectfully submitted June 13, 2014.

> */s/Brian R. Gilchrist*
> Jeffrey S. Boyles (FL Bar No. 722308)
> jboyles@addmg.com
> Brian R. Gilchrist (FL Bar No. 774065)
> bgilchrist@addmg.com
> Allison R. Imber (FL Bar No. 44233)
> aimber@addmg.com
> ALLEN, DYER, DOPPELT,
> MILBRATH & GILCHRIST, P.A.
> 255 South Orange Avenue, #1401
> Post Office Box 3791
> Orlando, FL  32802-3791
> Telephone:   (407) 841-2330
> Facsimile:   (407) 841-2343
>
> *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on June 13, 2014, the foregoing document was submitted for filing to the Clerk of the Court by using the Court's Case Management/Electronic Case Filing ("CM/ECF") System which will send a Notice of Electronic Filing to the following CM/ECF participants:

Frank R. Jakes,
Florida Bar No. 372226
frankj@jpfirm.com
Johnson, Pope, Bokor, Ruppel
  & Burns, LLP
403 East Madison Street, Suite 400
Tampa, Florida  33602
Telephone:	813-225-2500
Facsimile:	813-223-7118

*Counsel for Defendant,*
*Static Control Components, Inc.*

Andrew S. Chamberlin
North Carolina Bar No. 17369
Andrew.chamberlin@elliswinters.com
ELLIS & WINTERS, LLP
333 North Green Street, Suite 200
Greensboro, NC  27401
Telephone:	336-217-4195

*Admitted Pro Hac Vice for Defendant*,
*Static Control Components, Inc.*

William L. London,
Florida Bar No. 354384
skipl@scc-inc.com
Static Control Components, Inc.
3010 Lee Avenue
P.O. Box 152
Sanford, NC 27331
Telephone:	919-774-3808

*Counsel for Defendant,*
*Static Control Components, Inc.*

Alex J. Hagan
North Carolina Bar No. 19037
Alex.Hagan@elliswinters.com
Jeremy M. Falcone
North Carolina Bar No. 36182
jeremy.falcone@elliswinters.com
ELLIS & WINTERS, LLP
1100 Crescent Green Drive, Suite 200
Post Office Box 33550
Cary, NC  27636
Telephone:  919-865-7016

*Admitted Pro Hac Vice for Defendant*,
*Static Control Components, Inc.*


*/s/Brian R. Gilchrist*
Brian R. Gilchrist (FL Bar No. 774065)