# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

INDUSTRIAL ENGINEERING &
DEVELOPMENT, INC., ET AL.,

      Plaintiffs,

v.                                 Case No. 8:12-cv-691-T-24-MAP

STATIC CONTROL COMPONENTS,
INC.,

      Defendant.

_____/

## <u>ORDER</u>

This cause comes before the Court on Defendant/Counterclaimant Static Control Components, Inc.'s ("Defendant") Motion to Dismiss Count II of Plaintiffs' Amended Complaint For Lack of Subject Matter Jurisdiction. (Dkt. 127.) Plaintiffs/Counterclaim Defendants Industrial Engineering & Development Inc., Innovative Cartridge Technologies, Inc., Cartridge Corporation of America, Inc., American Imaging Cartridge, LLC; and Universal Imaging Holdings, LLC ("Plaintiffs") filed a response in opposition.[1] (Dkt. 130.) Defendant filed a reply (Dkt. 138), and Plaintiffs filed a surreply (Dkt. 147).

Also before the Court is Defendant's Motion to Strike Portion of Plaintiffs' Surreply (Dkt. 166.) Plaintiffs oppose. (Dkt. 175.)

---

[1] Each Plaintiff is owned by or affiliated with Steven Miller, the inventor of Plaintiffs' patents-in-suit. For the purpose of this motion, the term "Plaintiffs" refers to Plaintiffs collectively and individually.

## I.      LEGAL STANDARD

### A.      <u>Motion to Dismiss</u>

Challenges to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) come in two forms: facial attacks or factual attacks:

> "Facial attacks" on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. "Factual attacks," on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal alteration, quotation marks, and citations omitted).  Here, Defendant's motion to dismiss is a factual attack.

When considering a factual jurisdictional attack, "a trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations."  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (internal quotation marks omitted).  However, "a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action."  *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).  If so, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."  *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

### B.      <u>Subject Matter Jurisdiction under Declaratory Judgment Act</u>

Under the Declaratory Judgment Act, a party has standing to bring an action only if an "actual controversy" exists.  28 U.S.C. § 2201(a).  This "actual controversy" is the same as a justiciable "case or controversy" under Article III of the United States Constitution. *Teva Pharm.*

*USA, Inc. v. Novartis Pharm. Corp.,* 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41 (1937)).  "The burden is on the party claiming declaratory judgment jurisdiction to establish that an Article III case or controversy existed at the time the claim for declaratory relief was filed." *Arris Group, Inc. v. British Telecommunications PLC,* 639 F.3d 1368, 1373 (Fed. Cir. 2011).

In patent cases, determining whether a case or controversy exists depends on "all the circumstances" and facts of each case:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune,* 549 U.S. at 127 (footnote, citations, and internal quotation marks omitted); *see also Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("We need not define the outer boundaries of declaratory judgment jurisdiction, which will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case.").

Following *MedImmune*, the Federal Circuit explained that declaratory judgment jurisdiction generally will not arise without "some affirmative act by the patentee" relating to the enforcement of its patent rights:

> [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*SanDisk*, 480 F.3d at 1381.  However, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Id.*

In addition, the declaratory judgment plaintiff must show its "meaningful preparation to conduct potentially infringing activity":

> Although a [plaintiff] need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement, there must be a showing of "meaningful preparation" for making or using that product.

*Cat Tech*, 528 F.3d at 880-81.  This is because "[i]f a declaratory judgment plaintiff has not taken significant, concrete steps to conduct infringing activity, the dispute is neither 'immediate' nor 'real' and the requirements for justiciability have not been met."  *Id*. at 880.

## II.   BACKGROUND

### A.   <u>Factual Background</u>

Plaintiffs and Defendant are competitors in the development, manufacture, and sale of universal printer chips used in remanufactured toner printer cartridges.  Generally, a universal printer chip "facilitates interoperation with more than one model, brand or type of printer."  (Dkt. 133, Steven Miller 3/27/2014 Declaration ("Miller Decl."), Ex. E, License Agm't ¶ 1.22.)

#### 1.   <u>Prior litigation between Plaintiffs and Defendant</u>

In 2004, Defendant sued Steven Miller for, *inter alia*, copyright infringement, alleging that Defendant developed a computer code for universal chips and that Miller made and sold universal chips using Defendant's code.  (Miller Decl. ¶ 6.)  During the pendency of Defendant's lawsuit, Defendant's patents-in-suit—U.S. Patent No. 7,088,928 (the "'928 patent"), titled "Systems and Methods for Universal Imaging Components," and its continuation, U.S. Patent No. 7,254,346 (the "'346 patent")[2]—and Plaintiffs' patents issued.

---

[2] The '928 patent issued on August 8, 2006, and the '346 patent issued on August 7, 2007.

In November 2007, Defendant and Miller settled the 2004 lawsuit and executed a cross-license agreement granting each other royalty-bearing licenses under their respective patents. (Miller Decl., Ex. E., License Agm't.)  As relevant here, Defendant granted Plaintiffs a limited license under Defendant's patents to make, use, sell, offer to sell, or import universal chips for Hewlett Packard ("HP") printers.  (Miller Decl. ¶ 6.)  Specifically, Plaintiffs' license is limited to HP universal chips for use with new printer cartridges employing Plaintiffs' patented structure; Plaintiffs are not licensed for the individual sale of HP universal chips for use with remanufactured printer cartridges.  (License Agm't ¶ 2.1.1.)

      2.      <u>Assertion of patent rights</u>

In 2007, Defendant distributed an industry-wide notice regarding its '928 patent, stating that it would "vigorously protect" it.  (Dkt. 127-1, Pl. Resp. to Third Interrog. ¶ 16.)  In 2008, Defendant placed an advertisement in an industry magazine, asserting that it is the "only authorised provider of universal chips for HP printers," licensed under its '928 and '346 patents (as well as Plaintiffs' cross-licensed patents).  (*Id.*; *see also* Miller Decl., Ex. L.).

Further, in 2008, Defendant and Plaintiffs jointly [3] sued Future Graphics, Inc. for infringing Plaintiffs' and Defendant's patents by making and selling HP universal printer chips for use in remanufactured toner cartridges.  (Miller Decl. ¶ 14, Ex. J.)

In 2008, Defendant and Plaintiffs sent a joint letter to a large manufacturer and distributor of universal printer chips (the "Distributor"), giving notice of their patents and cross-license agreement.  (Dkt. 133, Ex. F.)  Defendant sent this notice based on the Distributor's sale of HP

---

[3] The parties' cross-license agreement provides for the joint enforcement of the parties' respective patents.  (Miller Decl. ¶ 14.)

universal printer chips.  (Miller Decl. ¶ 9.)   After this notice, the Distributor "ceased certain efforts to market HP universal printer chips."  (Miller Decl. ¶ 8.)

The Distributor subsequently became Plaintiffs' customer and requested Plaintiffs supply HP universal printer chips.  (Miller Decl. ¶ 8; Miller 3/19/14 depo. 31-33.)  Plaintiffs attempted to buy HP universal printer chips from Defendant, who refused to allow Plaintiffs to supply or manufacture HP universal printer chips for the Distributor.  (*Id.*)

In January or February 2009, Plaintiffs approached Defendant and disclosed their plan to supply HP universal printer chips to Chips, Inc., but Defendant objected and asserted that it would constitute patent infringement and a breach of the parties' cross-license agreement.  (Dkt. 201-2, Pl. Resp. to Third Interrog. ¶ 15; Miller 3/19/2014 Depo. 31-33.)  Defendant asserted that Chips, Inc. must buy HP universal chips from Defendant.  (*Id.*)[4]

        3.     <u>Meaningful preparation</u>

        a)     *The Distributor's HP universal printer chip*

In early 2009, the Distributor requested that Plaintiffs make and sell HP universal printer chips using a program code developed by the Distributor.  (Miller 3/19/14 depo. 33-40.) The Distributor brought Plaintiffs its code, hardware, a programming device, and prototype chips. (*Id.*)  Plaintiffs programmed the prototype chips and tested them to determine if they infringed Defendant's patents.  (*Id.*)  Finding that they would infringe, Plaintiffs declined the Distributor's offer.  (*Id.*)

---

[4] Similarly, in 2009, Plaintiffs and Defendant were in the process of settling a lawsuit against another company, who requested the right to purchase HP universal printer chips from Plaintiffs. However, Defendant "indicated that would not be possible because of Defendant's patent" and that the company "would have to purchase universal HP chips from Defendant."  (Dkt. 201-2, Pl. Resp. to Third Interrog. ¶ 16.)

<i>b)</i>     <i>Plaintiffs' HP universal printer chip</i>

However, "Plaintiffs engaged in development projects with [the Distributor] relating to HP universal printer chips in 2009 and 2010," and "[t]hrough these activities, Plaintiffs' current program code for HP universal chips was derived."   (Miller Decl. ¶ 8.)  Because Plaintiffs' code functions the same as the code for the Distributor's HP universal chips for which Defendant sent the 2008 notice, and contains a "printer determining routine," Plaintiffs believe offering HP universal chips containing this code would risk infringing Defendant's patents.  (*Id.*)

Further, sometime before initiating this lawsuit, Plaintiffs built a mold that was unique to certain HP universal chips.  (Miller Decl. ¶ 11; Miller 3/19/14 depo. at 29-30.)  Plaintiffs also had purchased certain microprocessors, which can be programmed with code to manufacture universal printer chips; Plaintiffs' code for HP universal printer chips was specifically designed to work with these microprocessors.  (Miller Decl. ¶ 13.)  Plaintiffs also maintained equipment and tools necessary to produce HP universal printer chips.  (*Id.*)

<i>c)</i>     <i>The Foreign Manufacturer's HP universal printer chip</i>

In 2011, a foreign manufacturer and distributor of universal printer chips (the "Foreign Manufacturer") offered its HP universal printer chips to Plaintiffs to sell in the United States. (Miller Decl. ¶ 10.)  Plaintiffs worked with the Foreign Manufacturer to develop a code and test the chips. (*Id.*; Miller 3/20/14 depo. 62-71.) Plaintiffs declined the offer because of Defendant's patents.  (Dkt. 201-2, Pl. Resp. to Third Set of Interrog. ¶ 15.)

In 2011, Plaintiffs requested Defendant grant Plaintiffs a license to offer HP universal printer chips, but Defendant declined.  (Miller Decl. ¶ 10.)

7

### B.    <u>Procedural History</u>

In March 2012, Plaintiffs initiated the instant lawsuit against Defendant. Plaintiffs' original complaint asserted a breach of contract cause of action, alleging Defendant breached the cross-license agreement by failing to pay royalties owed to Plaintiffs under Plaintiffs' patents. Defendant filed affirmative defenses and counterclaims asserting that, *inter alia*, Plaintiffs' patents-in-suit were invalid.

Plaintiffs moved to dismiss the invalidity defenses and counterclaims, arguing that the cross-license agreement prohibited both parties from challenging the validity of each other's patents. However, the Court denied Plaintiffs' motion to dismiss, finding it relied on matters that were outside the allegations as pled and that should be raised in a motion for summary judgment. (Dkt. 49, Jan. 21, 2013 Order.)

Despite maintaining their position that the cross-license agreement prohibited patent invalidity challenges from either party, Plaintiffs moved for leave to file an amended complaint to add Count II, seeking to invalidate Defendant's '928 patent and '346 patents under the Declaratory Judgment Act. Defendant opposed the amendment, arguing that it would be futile, because no case or controversy existed and therefore the Court lacked subject matter jurisdiction over Count II of Plaintiffs' amended complaint. The Court granted Plaintiffs' motion to amend, finding that Count II sufficiently alleged a case or controversy between the parties. (Dkt. 85.)[5]

On May 9, 2013, Plaintiffs filed their amended complaint. (Dkt. 86.) Count II alleges that Plaintiffs cannot offer universal printer chips for remanufactured HP printer cartridges because Defendant told Plaintiffs that were not permitted to do so. (*Id.*)

---

[5] The Court subsequently extended the discovery deadline to April 28, 2014, and dispositive motions deadline to May 12, 2014. (Dkt. 120.)

On March 10, 2014, Defendant filed the instant motion to dismiss Count II of Plaintiffs' amended complaint for lack of subject matter jurisdiction. Pointing to Plaintiffs' discovery responses,[6] Defendant argues that no case or controversy exists because Plaintiffs never engaged in "meaningful preparation" to make or sell infringing HP universal printer chips. Defendant also asserts that, even if Plaintiffs identified a universal printer chip they intended to make or sell, Defendant may not have any interest in enforcing its patents against Plaintiffs.

Plaintiffs filed a response in opposition, attaching a March 27, 2014 declaration from Miller. Citing to Miller's March 19 and 20, 2014 deposition testimony, Defendant replies that Miller's declaration is insufficient to establish a case or controversy.

## III.    DISCUSSION

### A.    <u>Meaningful Preparation</u>

Defendant argues that Count II should be dismissed because Plaintiffs failed to show that they took significant, concrete steps to make or sell HP universal printer chips as of May 9, 2013, when Plaintiffs filed their amended complaint.[7] Plaintiffs respond that they had taken meaningful steps to prepare HP universal printer chips, because they had their program code for HP universal printer chips (the software), microprocessors (the hardware), equipment and tools necessary to make the chips, and a customer base.

---

[6] Defendant did not take Miller's deposition until March 19 and 20, 2014.

[7] Plaintiffs must establish that a case or controversy existed as of May 9, 2013, the date Plaintiffs filed Count II, their claim for declaratory relief. *See Arris Group, Inc. v. British Telecommunications PLC,* 639 F.3d 1368, 1373 (Fed. Cir. 2011) (holding a plaintiff has the burden "to establish that an Article III case or controversy existed at the time the claim for declaratory relief was filed"); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 13329, 1337 (Fed. Cir. 2008) (determining subject matter jurisdiction based on amended complaint allegations concerning actions taken after the filing of the initial complaint).

In its reply, Defendant disputes Plaintiffs' meaningful preparation, asserting that Plaintiffs had "no code, no plans, no ongoing negotiations and no expressed interest in offering HP universal chips whatsoever." (Dkt. 138 at 4.) Defendant contends Miller's declaration regarding Plaintiffs' program code was an "utter surprise" to Defendant, because Plaintiffs never mentioned that code in their discovery responses or during Miller's deposition. (*Id*. at n.1.) Defendant asserts that, nonetheless, Plaintiffs fail to prove they had any interest in using that code as of May 9, 2013, given that Plaintiffs' only plans "from 2011 onward" relate to the Foreign Manufacturer's HP universal chip. (*Id*.)

The Court disagrees with Defendant's assertion that Plaintiffs' activities do not rise to the level of meaningful preparation to conduct potentially infringing activity. Miller's declaration is evidence that Plaintiffs had the software, hardware, equipment, and tools needed to make HP universal printer chips.[8] These are significant, concrete steps to make HP universal printer chips before May 9, 2013. Further, Plaintiffs have the necessary expertise and the resources to make HP universal printer chips. *See e.g., Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 689 F.3d 1303, 1318 (Fed. Cir. 2012) (finding jurisdiction existed and considering the plaintiff's "resources and expertise to immediately undertake" the potentially infringing activity).

While Plaintiffs ultimately declined the Distributor's offer in 2009 and the Foreign Manufacturer's offer in 2011, Plaintiffs nonetheless had worked with both to develop HP universal printer chips. According to Miller, Plaintiffs programmed the Distributor's prototype chips and worked with the Foreign Manufacturer to develop its program code and test its prototype chips. Taken together, Plaintiffs' level of preparation to conduct potentially infringing activity created a controversy of sufficient immediacy and reality as of May 9, 2013.

---

[8] While suggesting it was surprised by Miller's declaration, Defendant never moved to strike it.

B.      **Defendant's Assertion of Patent Rights**

Defendant asserts that, even if Plaintiffs could identify HP universal printer chips they intend to make or sell, Plaintiffs have not shown that Defendant has an interest in enforcing its patent rights.  Plaintiffs respond that the following shows Defendant's willingness to assert its patent rights over HP universal printer chips: (1) Defendant's notices and letters to competitors; (2) the parties' litigation history; and (3) Defendant's repeated and express refusal to allow Plaintiffs to make or sell HP universal printer chips.

In *SanDisk Corp. v. STMicroelectronics, Inc.,* the plaintiff brought a declaratory judgment action after it engaged in detailed discussions with the defendant about the possibility of a cross-licensing agreement. 480 F.3d 1372, 1374-76 (Fed. Cir. 2007).  At one licensing meeting, the defendant presented a detailed analysis of how the plaintiff's products infringed the defendant's patents.   At the end of the presentation, however, the defendant's executive disclaimed any intention to bring an infringement suit.  Nonetheless, the Federal Circuit found there was a justiciable controversy because the defendant had "engaged in a course of conduct that show[ed] a preparedness and willingness to enforce its patent rights." *Id.* at 1383.

The Federal Circuit has also found jurisdiction in cases where the defendant's conduct was less extensive.  For example, in *ABB Inc. v. Cooper Indus., LLC,* the parties entered a license agreement after settling their prior patent infringement litigation. 635 F.3d 1345, 1346-47 (Fed. Cir. 2011).  Subsequently, the declaratory judgment plaintiff began outsourcing the manufacture of the product at issue, after which the defendant sent the plaintiff a letter stating that the plaintiff had no right to do so under the license.  *Id.*  The Federal Circuit found that, under these circumstances, the defendant's letters to the plaintiff were sufficient to show an immediate and real controversy.  *Id.* at 1349; *see also, e.g., 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372,

1376 (Fed. Cir. 2012) (finding informal discussions could create a justiciable controversy, even if the defendant did not provide a detailed infringement analysis).

Here, considering the totality of the circumstances, Defendant's affirmative acts demonstrate its willingness to enforce its patent rights based on Plaintiffs' manufacture or sale of HP universal printer chips.  Defendant issued an industry notice asserting its right to HP universal printer chips under its patent.  *See Micron Tech., Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897, 899 (Fed. Cir. 2008) (finding that the patentee's public statements confirmed its intent to continue its aggressive litigation strategy).  Defendant also issued a notice to the Distributor who sold HP universal printer chips, and sued competitors who made and sold HP universal printer chips.  *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office,* 689 F.3d 1303, 1319 (Fed. Cir. 2012) (finding that "asserting [] patent rights against other similarly situated parties[] [is] a fact to be considered in assessing the existence of an actual controversy under the totality of circumstances").

Further, Defendant has sued Plaintiffs in the past over the universal printer chip technology.  *See Vanguard Research, Inc. v. PEAT, Inc.,* 304 F.3d 1249, 1255 (Fed. Cir. 2002) (finding an actual controversy between the parties where the defendant had sued the plaintiff for misappropriation of trade secrets based on the same technology that was covered by the patent-in-suit).  In 2009, Defendant told Plaintiffs that making or selling HP universal chips would constitute patent infringement and violate the cross-license agreement, and told Plaintiffs that they were not allowed to make or sell HP universal printer chips. *See ABB*, 635 F.3d at 1346-47 (finding a controversy of sufficient immediacy and reality where the licensor asserted that the licensee had no rights under the license); *Arkema*, 706 F.3d at 1358 (finding the patentee "has declined to grant [the plaintiff] a covenant not to sue . . . , which further suggests that there is an

active and substantial controversy"). Defendant's statements—particularly in light of the parties' litigation history and Defendant's conduct towards other industry competitors—constitute sufficient affirmative acts regarding Defendant's patent rights for declaratory judgment purposes.

Defendant argues that its conduct cannot establish a reasonable threat of suit as of May 9, 2013, due to the intervening years between Defendant's statements and Plaintiffs' declaratory judgment action.  Specifically, Defendant asserts that its industry notice and advertisements issued five to seven years before Plaintiffs filed Count II, and Plaintiffs have not disclosed any plans to make or sell HP universal chips since 2009, four years before Plaintiffs filed Count II.

However, the intervening period between Defendant's assertion of its patent rights and Plaintiffs' filing Count II does not defeat jurisdiction in this case.  In *Association for Molecular Pathology*, the Federal Circuit found a justiciable controversy existed, even when the declaratory judgment plaintiff's action was filed ten years after the defendant's assertions of patent rights. 689 F.3d at 1318.  In that case, the defendant had sent the plaintiff (and other companies in the industry) a warning letter asserting the defendant's patent rights over certain testing procedures. Over the next ten years, the defendant successfully sued industry competitors.  Rather than performing the testing procedures himself, the plaintiff contracted to have the defendant conduct the testing.  The court found that the passage of time did not defeat jurisdiction because the relevant circumstances surrounding the defendant's assertion of patent rights—*e.g.,* the technology underlying the testing, the plaintiff's ability and desire to perform the testing, and the defendant's successful litigation against others—had not changed.  *Id.; see also Micron,* 518 F.3d at 899-901 (while the plaintiff's declaratory judgment was filed four years after receiving a letter suggesting it license the defendant's technology, a justiciable controversy existed because the defendant had been suing industry competitors during the intervening four-year period).

Here, the relevant circumstances have not changed since the time that Defendant issued notices or denied Plaintiffs' disclosed plans regarding HP universal printer chips and the time Plaintiff filed Count II.  Nothing indicates the following has changed: Defendant's technology surrounding HP universal printer chips; Defendant's position regarding the accused activities; or Plaintiffs' ability to make and sell HP universal printer chips.  Thus, the passage of time does not show a lack of controversy between Defendant and Plaintiffs.

Defendant also argues that it could not have asserted its patent rights because Plaintiffs never gave Defendant a prototype HP universal printer chip for Defendant's review to determine whether it infringed.  The Court disagrees that this defeats jurisdiction in this case.  Regardless of whether Defendant had a chance to view a prototype HP universal chip, Defendant's conduct— previously suing Plaintiffs, asserting its patent rights against competitors, and asserting its patent rights in response to Plaintiffs' requests regarding HP universal chips—constitute affirmative acts regarding the enforcement of its patent rights.  *See, e.g., Poly-Am., L.P. v. Stego Indus., L.L.C.*, 694 F. Supp. 2d 600, 607 (N.D. Tex. 2010) (rejecting the defendant's argument that it could not have asserted any rights based on the plaintiff's "certain identified ongoing or planned activity" because the defendant did not have the opportunity to view and evaluate the plaintiff's proposed product); *cf. Innovative Therapies Inc. v. Kinetic Concepts, Inc.*, 509 F.3d 1377, 1380-81 (Fed. Cir. 2010) (finding that under all the circumstances, the fact that the patentee had not seen the allegedly infringing product supported a finding that the patentee did not assert its patent rights).  Under the totality of the circumstances, the Court finds there is a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Accordingly, Defendant's motion to dismiss Count II for lack of subject matter jurisdiction is denied.

**IV.     MOTION TO STRIKE SURREPLY**

Defendant filed a motion to strike a portion of Plaintiff's surreply.   However, this is denied as moot, because the Court reached its conclusion without considering the surreply.

**V.     CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

A.  Defendant's Motion to Dismiss Count II of Plaintiffs' Amended Complaint For Lack of Subject Matter Jurisdiction (Dkt. 127) is **DENIED**; and

B.  Defendant's Motion to Strike a Portion of Plaintiffs' Surreply (Dkt. 166) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of August, 2014.

SUSAN C. BUCKLEW
United States District Judge